IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA

v.                               Criminal No. 3:09cr294

BOBBY A. DAVIS

## MEMORANDUM OPINION

This matter is before the Court on the DEFENDANT'S MOTION TO RECONSIDER COURT'S DENIAL OF MOTION TO SUPPRESS STATEMENTS AND EVIDENCE (Docket Nos. 21, 25). For the reasons set forth below, the motion will be granted.

## PROCEDURAL BACKGROUND

The Defendant, Bobby A. Davis, was charged in a three-count Indictment. Count One charged Davis with Possession with Intent to Distribute Cocaine Base in violation of 21 U.S.C. § 841. Count Two charged him with Possession with Intent to Distribute Marijuana in violation of 21 U.S.C. § 841. Count Three charged Possession of a Firearm in Furtherance of a Drug Trafficking Crime in violation of 18 U.S.C. § 924(c). A Superseding Indictment was filed, adding Count Four, Possession of a Firearm by a Person Convicted of a Misdemeanor Crime of Domestic Violence in violation of 18

U.S.C. § 922(g)(9). Thereafter, Davis filed a Motion to Suppress the evidence that was obtained during an encounter with a police officer and a search incident to an ensuing arrest, as well as statements made by Davis after the arrest. The Court heard evidence on the motion and denied it from the bench. Davis filed this Motion to Reconsider and it has been briefed. Having now reviewed the supplemental briefs and having concluded that a further evidentiary hearing is unnecessary, the Court considers the motion to be ripe for decision.

The original motion to suppress was premised on the assertion that a so-called "pat down" of Davis was unconstitutional. In that motion, Davis did not attack the stop as unconstitutional. Nonetheless, the response filed by the United States addressed both the pat down and the stop. In reply, Davis continued to focus on the alleged unconstitutionality of the pat down after the stop, and, in doing so, he alluded to the stop but did not contend that it was in violation of the Fourth Amendment.

The motion to reconsider focuses on the stop, contending that it was offensive of the Fourth Amendment. The pertinent facts are set forth below.

## FACTUAL BACKGROUND

At approximately one-thirty in the morning of May 8, 2009, Officer Darnell observed Davis walking on the roadway in the 1600 block of Valley Road, which is located between two public housing projects, both of which are known to be high crime areas in which illegal drugs are trafficked and illegal firearms are plentiful and used. Valley Road is an oft-used route between the two projects, but is not itself denoted as a high crime area. There is no sidewalk on Valley Road and a guardrail runs along one side of the road. Officer Darnell first observed Davis "around the bend of Valley Road." Officer Darnell did not see Davis step into the road. Nonetheless, he thought that Davis was in violation of Va. Code § 46.2-926 which provides:

> No pedestrian shall step into a highway open to moving vehicular traffic at any point between intersections where his presence would be obscured from the vision of drivers of approaching vehicles by a vehicle or other obstruction at the curb or side.

Officer Darnell drove past Davis "to get ahead of him and make sure no cars were coming around the corner." The officer then parked his vehicle and waited for Davis so that the officer could advise Davis that it was unsafe to walk in the road and further investigate the situation.

At the time, Officer Darnell anticipated issuing to Davis a summons for violating Virginia Code § 46.2-926. As Davis approached Officer Darnell, Davis walked across the road, crossing from the right side to the left side.

Officer Darnell told Davis to stop when they were about twenty feet apart. Davis continued walking and finally stopped when he was about ten feet ahead of Officer Darnell. When Officer Darnell started to question Davis, Davis began to "blade" his body. The officer explained that "blading" is a technique used by people in possession of illegal guns or drugs as a way to obscure the illegally possessed item from the view of police by continuing to turn one's body so that the illegally possessed item is hidden by the body. Officer Darnell testified that he tried to get in front of Davis to make eye contact with him, but Davis kept blading his body.

At that point, Officer Darnell came to the view that Davis possessed a firearm which he was blading from the officer's view. Therefore, in the interest of his own safety, Officer Darnell patted down Davis and found a concealed weapon in the waistband of Davis' pants on the left side of his body. Officer Darnell arrested Davis for possessing a concealed weapon and issued a summons for violation of § 46.2-926. A search incident to the arrest

turned up cocaine base and marijuana. In addition, Davis, after having been properly warned of his rights, made incriminating statements.

## DISCUSSION

### I. The Legal Standard

The Fourth Amendment to the Constitution provides that "people are to be secure in their persons . . . against unreasonable searches and seizures." U.S. Const. Amend. IV; see also Wolf v. Colorado, 338 U.S. 25, 27-28 (1949) (holding that the Fourth Amendment is incorporated through the Fourteenth Amendment). Generally, evidence collected in violation of the Fourth Amendment must be excluded from use at trial. See Mapp v. Ohio, 367 U.S. 643, 651-57 (1961). At issue in this motion is whether the officer's conduct in stopping Davis violated the Fourth Amendment

It is settled that "a police officer may temporarily stop a citizen where the police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot." United States v. Mayo, 361 F.3d 802, 805 (4th Cir. 2004) (citing Terry v. Ohio, 392 U.S. 1, 30 (1968)). Thus, when an officer observes unlawful conduct, he is justified in making a stop under the Fourth Amendment. See United

States v. Hassan, 5 F.3d 726, 730 (4th Cir. 1993) ("[W]hen an officer observes a traffic offense or other unlawful conduct, he or she is justified in stopping the vehicle under the Fourth Amendment.").

Davis contends that the record establishes merely that he was walking in the road; that the statute which Officer Darnell thought Davis to be violating does not prohibit the conduct in which Davis was engaged; and that, therefore, Officer Darnell stopped him because of a mistaken view of the law. Thus, says Davis, the Terry stop was unconstitutional.

The United States argues that Davis' conduct was prohibited by § 46.2-926 and that Officer Darnell did not act under a mistake of law when he stopped Davis. Thus, says the United States, the stop was a lawful one.[1] And, according to the United States, even if Officer Darnell acted under a mistake of law, the good faith exception of United States v. Leon, 468 U.S. 897 (1984), precludes suppression of the evidence.

A. Virginia Code § 46.2-926

The positions of the parties make it necessary to determine what conduct is prohibited by § 46.2-926. The

---

[1] The United States does not argue that Officer Darnell acted under a mistake of fact.

6

parties agree that the elements of the offense proscribed by the code section are: (1) that a pedestrian must step into a highway; (2) that the highway must be open to moving vehicular traffic; (3) that the pedestrian must step into the highway at any point between intersections; and (4) that the pedestrian's presence would be obscured from the vision of drivers of approaching vehicles by a vehicle or other obstruction at the curb or side.

The analysis begins with the statutory text because, under well-settled rules of statutory construction, a court considers "the language of a statute to determine the General Assembly's intent from the plain and natural meaning on the words used." <u>Virginia Dep't of Corrections v. Estep</u>, 55 Va. App. 386, 390 (Va. Ct. App. 2009) (citing <u>Alcoy v. Valley Nursing Homes, Inc.</u>, 272 Va. 37, 41, 630 S.E.2d 301, 303 (2006)). And, of course, courts "must assume that the legislature chose, with care, the words it used when it enacted the relevant statute, and [courts] are bound by those words as [they] interpret the statute." <u>Estep</u>, 55 Va. App. at 390-91. At this point, it is well to once again recite the statutory text:

> No pedestrian shall step into a highway open to moving vehicular traffic at any point between intersections where his presence would be obscured from the vision of drivers of

approaching vehicles by a vehicle or other obstruction at the curb or side.

Va. Code § 46.2-926.

The plain language of the statute requires that a pedestrian "step into" a roadway to violate the statute. Further, the stepping into the roadway must occur between intersections and at a location where the pedestrian's presence would be obscured from the vision of an approaching vehicle by another vehicle or other obstruction at the curb. Clearly, the plain text of the statute does not prohibit the act of walking in the roadway.

The Supreme Court of Virginia has given the statute just that construction, albeit in a different context. For example, in <u>Cofield v. Nuckles</u>, a pedestrian, Nuckles, was struck by a van in the roadway. 239 Va. 186, 186, 387 S.E.2d 493, 494 (1990). Nuckles sued for the personal injury sustained when the van hit him. <u>Id.</u> The defendants argued that Nuckles was negligent as a matter of law because he violated Va. Code § 46.1-232, now § 46.2-926. The Supreme Court explained that the statute "applied to a pedestrian who stepped from an obscured position at the curb or side of the road into moving traffic." <u>Id.</u> at 190, 387 S.E.2d at 495. Conversely, the

Supreme Court of Virginia explained that the statute was not applicable when a pedestrian initially steps "from a position where he could be seen by oncoming vehicles." Id. Similarly, in Reams v. Cone, the Supreme Court of Virginia found that Va. Code § 46-245, now § 46.2-926, applied to situations where a pedestrian "crosses a street between intersections."[2] 190 Va. 835, 840, 59 S.E.2d 87, 89 (1950). In both cases, the pedestrian was walking in the roadway, but the Supreme Court of Virginia did not define the statute to prohibit that conduct. Instead, in both cases, the statute was construed to prohibit crossing the road at certain points under certain conditions.

According § 46.2-926 its rather clear and limited application also serves to assure that § 46.2-928, a related statute, is given its appropriate reach and serves, as well, to reconcile the two companion statutory provisions. That is important because courts should "not assume that the General Assembly intends to enact irreconcilable statutory provisions." County of

---

[2] The only other case interpreting § 46.2-926 and its predecessors is Shulleeter v. Tate, 16 Va. Cir. 407 (Va. Cir. Ct. 1967). In that case, a jaywalking pedestrian was struck by a vehicle and brought an action for negligence. Id. at 407-08. The court, without discussing the elements of the statute, held that the plaintiff was negligent because his actions violated the former version of § 46.2-926. Id. at 408.

Greensville v. City of Emporia, 245 Va. 143, 149, 427 S.E.3d 352, 356 (1993). And, courts are obligated, if reasonably possible, to "construe enactments in a way that gives full effect to all the statutory language." Id.

Va. Code § 46.2-928 addresses the conduct of walking in the roadway. That statute provides:

> Pedestrians shall not use the roadways for travel, except when necessary to do so because of the absence of sidewalks which are reasonably suitable and passable for their use. If they walk on the hard surface, or the main traveled portion of the roadway, they shall keep to the extreme left side or edge thereof, or where the shoulders of the highway are of sufficient width to permit, they may walk on either shoulder thereof.

If § 46.2-926 is considered in perspective of § 46.2-928, it becomes quite clear that walking in the roadway is controlled by § 46.2-928 and that § 46.2-926 proscribes quite different, and much more limited conduct: stepping into a roadway at a specific location (between intersections) under specific circumstances (being obscured from oncoming vehicles) by specific items (vehicles or obstructions) located at a specific place (the curb or road side). When the record here is considered in perspective of both statutes, it becomes

obvious that Davis was not violating § 46.2-926 when he was stopped by Officer Darnell.³

The record is that, according to Officer Darnell, there was no sidewalk on Valley Road and there is a guardrail on the side of the road. That, of course, necessitates that a pedestrian must walk in the roadway and he is allowed to do so by § 46.2-928. And, according to Officer Darnell, Davis was walking "close to the side of the road," and, thus, was in compliance with § 46.2-928.

If the Court were to accept the position of the United States, Davis would have been in compliance with § 46.2-928, which specifically addresses when a pedestrian may walk in the roadway, but in violation of § 46.2-926. The General Assembly, in passing these code sections, almost certainly did not intend to create such a conflict. Thus, in light of the entire chapter of the Virginia Code addressing pedestrians, and the specificity by which § 46.2-928 addresses a pedestrian walking in the roadway, the correct reading of § 46.2-926 is that it applies to situations in which a pedestrian steps into and attempts

---

³ Nor does the record show a violation of § 46.2-928. Neither Officer Darnell nor the United States have said that Davis was violating that statute.

to cross a road where he may be obscured from approaching traffic but not where he is simply walking in the roadway.

This gives full effect to both §§ 46.2-926 and 46.2-928. And, so doing, necessitates the conclusion that Davis did not violate § 46.2-926. Thus, Officer Darnell made a mistake of law in concluding otherwise and, on the basis of that mistake, he stopped Davis.

B. Mistake of Law

It then becomes necessary to address whether an officer's mistake of law renders a stop invalid. The majority of circuits to have considered the issue have held that a stop is invalid when it is based on an officer's mistake of law, even if that mistake is a reasonable one. See e.g United States v. Chanthasouxat, 342 F.3d 1271 (11th Cir. 2003) ("[A] mistake of law cannot provide reasonable suspicion or probable cause to justify a traffic stop."); accord United States v. McDonald, 453 F.3d 958, 960 (7th Cir. 2006); United States v. Tibbetts, 396 F.3d 1132, 1138 (10th Cir. 2005); United States v. Lopez-Soto, 205 F.3d 1101, 1105 (9th Cir. 2000); United States v. Lopez-Valdez, 178 F.3d 282, 288 (5th Cir. 1999). The explanation given by the Seventh Circuit when it joined the majority view is instructive. In United States

v. McDonald, 453 F.3d at 961-62, the Seventh Circuit held that:

> Probable cause only exists when an officer has a "reasonable" belief that a law has been broken. . . .Law enforcement officials have a certain degree of leeway to conduct searches and seizures, but "the flip side of that leeway is that the legal justification must be objectively grounded". . . .An officer cannot have a reasonable belief that a violation of the law occurred when the acts to which an officer points as supporting probable cause are not prohibited by law.
>
> It makes no difference that an officer holds an understandable or "good faith" belief that a law has been broken. Whether the officer's conduct was reasonable under the circumstances is not the proper inquiry. . . .Rather, "the correct question is whether a mistake of law, no matter how reasonable or understandable, can provide the objectively reasonable grounds for providing reasonable suspicion or probable cause.". . . .The answer is that it cannot. A stop based on a subjective belief that a law has been broken, when no violation actually occurred, is not objectively reasonable.

That same reasoning permeates the decisional majority on this issue.

The Eighth Circuit has not taken the view adopted by its sister circuits. Instead, it regards the distinction between an officer's mistake of law and mistake of fact as irrelevant to the Fourth Amendment inquiry. United States v. Smart, 393 F.3d 767, 770 (8th Cir. 2005). Citing its earlier decision in United States v. Sanders, 196 F.3d

910, 913 (8th Cir. 1999), the Eighth Circuit explained that:

> the validity of a stop depends on whether the officer's actions were objectively reasonable in the circumstances, and in mistake cases the question is simply whether the mistake, whether of law or fact, was an objectively reasonable one.

Smart, 393 F.3d at 770.

There is considerable appeal in the Eighth Circuit's approach, but the majority view more completely takes into account the purpose of the Fourth Amendment and decisions which animate it in the context of investigatory stops.

The Fourth Circuit has not addressed this issue. In United States v. McHugh, 2009 WL 3634278, at * 3 n.3 (4th Cir. Nov. 4, 2009), the Court of Appeals simply assumed that a stop based on a mistake of law is invalid. ("For purposes of our discussion, we assume, without deciding, that an officer's reasonable mistake of law may not provide the objective grounds for reasonable suspicion to justify a traffic stop.") However, the majority position is based on sound reasoning. Hence, it is likely that our Court of Appeals would hew to the majority rule. Under that precept, the officer's mistake of law renders the stop invalid, and the evidence recovered during the search of Davis' person, the evidence obtained in the ensuing

14

arrest, and his statements after that arrest must be suppressed under the exclusionary rule.

C. Good Faith Exception

The United States contends that, even if the officer made a mistake of law and erroneously applied § 46.2-926, the exclusionary rule should not apply because the stop was made in good faith. According to the United States, suppression is not justified "where officers are facing an unsettled question of state law and adopt an objectively reasonable interpretation." (Id. at 8.)

Several circuits have considered and rejected the application of the good faith exception when an officer makes a stop based on a mistake of law. See McDonald, 453 F.3d at 962; Chanthasouxat, 342 F.3d at 1280; Lopez-Soto, 205 F.3d at 1106; Lopez-Valdez, 178 F.3d at 289. Those circuits reasoned that to create an exception for an officer's good faith mistake of law "would defeat the purpose of the exclusionary rule, for it would remove the incentive for police to make certain that they properly understand the law that they are entrusted to enforce and obey." Lopez-Soto, 205 F.3d at 1106. The Eleventh Circuit further reasoned that it was fundamentally unfair to hold citizens "to the traditional rule that ignorance of the law is no excuse, while allowing those entrusted to

15

enforce the law to be ignorant of it." Chanthasouxat, 342 F.3d at 1280.

The United States takes the view that this case is distinguishable because here, the officer was applying an unsettled law. As a result, the United States asserts, applying the exclusionary rule will not result in an appreciable deterrence, one of the primary aims of the rule. See United States v. Janis, 428 U.S. 433, 454 (1976) (stating that the exclusionary rule should be applied when doing so will result in appreciable deterrence of future constitutional violations).

It is true that there is little decisional law applying § 46.2-926 and perhaps, in that limited sense, the law is unsettled. However, the statutory text of § 46.2-926 is plain and straight forward. And, when considered in perspective of § 46.2-928, it simply does not admit of the interpretation pressed here. In any event, the argument made by the United States really is that the officer's mistake was reasonable. Most circuits have concluded that a reasonable mistake of law simply does not animate the good faith exception. See McDonald, 453 F.3d at 961-62 (holding that the good faith exception does not apply because a "stop based on a subjective belief that a law has been broken, when no violation

actually occurred, is not objectively reasonable.");
Lopez-Soto, 205 F.3d at 1106 (holding that allowing the good faith exception for officer's mistakes of law "would defeat the purpose of the exclusionary rule, for it would remove the incentive for police to make certain that they properly understand the law that they are entrusted to enforce and obey."). That reasoning is persuasive and it forecloses application of the good faith exception of Leon.

## CONCLUSION

For the foregoing reasons, the DEFENDANT'S MOTION TO RECONSIDER COURT'S DENIAL OF MOTION TO SUPPRESS STATEMENTS AND EVIDENCE (Docket Nos. 21, 25) will be granted.

It is so ORDERED.

/s/ REP
Robert E. Payne
Senior United States District Court

Richmond, Virginia
Date: February 23, 2010